> Where a decree was rendered directing an administrator, if unable to
> pay a distributive share to the distributee, to pay it to the surrogate's
> court of the county, it meant payment into court in the manner prescribed
> by Code Civ. Proc. §§ 2537, 2748, providing for the payment of such a
> share to the county treasurer, and therefore payment to the surrogate
> himself cannot discharge the administrator.

In the matter of the estate of Jacynthia Sackett, deceased.   Applica-
tion for execution on decree of surrogate, entered on judicial settle-
ment of administrator's account. · Decree granted.

Thomas H. Larkins, for petitioner.
Towne & Smith, for administrator.

WOODBURY, S.   Jacynthia Sackett died intestate and a resident
of Chautauqua county.   Van Buren Sackett was appointed and acted
as administrator of her estate.   The petitioner, Judson Sackett, was
one of her next of kin, and entitled to a distributive share of her estate.
In proceedings duly had and taken in this court, at the instance of the
administrator, before Hon. Daniel Sherman, then surrogate, a decree
was made and entered on the 30th day of June, 1894, judicially settling
the account of the administrator, and directing the payment and dis-
tribution of the estate found to be in his hands among the next of
kin of the deceased.   With respect to the petitioner, Judson Sackett,
the decree fixed his distributive share at $498.60, and directed the
same to be paid to him by the administrator.   The said Judson Sack-
ett, at the time of the settlement and the entry of the decree, was
missing, and had been for several years prior thereto.   He neither
appeared in nor was represented in the settlement proceeding, and the
only service of citation upon him therein was by publication.   In view

of his absence, the following provision was inserted in the decree with reference to his distributive share and the payment thereof:

"And in case that said administrator cannot pay said money coming to Judson Sackett, then he is hereby ordered to pay the said share or amount so coming to said Judson Sackett to the surrogate's court of the county of Chautauqua, N. Y., and take his receipt for the same, and upon filing said receipt, together with the receipts of the next of kin, as aforesaid, that then said administrator be discharged from all liability as such administrator."

At the time of the settlement the administrator paid the amount belonging to the said Judson Sackett to Hon. Daniel Sherman, then surrogate of said county, and he has never made any other payment of said distributive share to any one. In the year 1900 the said Judson Sackett reappeared, and claimed his distributive share of said estate, as fixed by said decree, but no part of the same has been paid to him or for his benefit, except as the same was turned over and paid to said surrogate by the said administrator, and excepting the sum of $65, which was paid to him on the 21st day of June, 1900, by or at the instance of said surrogate. On the 16th day of April, 1901, he caused a transcript of so much of said decree as affected his interest to be filed and docketed in the clerk's office of said county of Chautauqua. He now makes this application to the surrogate for an execution to enforce the said decree respecting the amount directed to be paid to him. Upon the return of an order to show cause, the administrator appears, and pleads payment of said moneys to the said surrogate as a defense to the application for execution, and the sole question involved in the case is whether the payment of said moneys by the administrator to the said surrogate is a payment of money to the surrogate's court, as directed by the terms of said decree, or can in any manner be treated as a satisfaction of said decree, so as to protect the administrator, and relieve him from the execution applied for. The contention of the administrator raises the question of the interpretation to be given to the provisions of the decree; he contending that the language employed and the meaning thereby conveyed was satisfied by such payment to the surrogate. In this position I cannot concur. I know of no provision of the statute which permits a surrogate to receive, or authorizes him to make a decree that he shall or may receive, the distributive share of an individual in any estate. The administrator, in case of intestacy, is the person directed by statute to make the distribution (section 2743, Code Civ. Proc.), except that section 2748 of the Code provides that such decree must direct that a distributive share shall be paid to the county treasurer if not paid to the person entitled thereto within two years from the time the decree is made, and, if so paid, can only be paid out by special direction of the surrogate, or pursuant to the directions of a court of competent jurisdiction. As I interpret this section, in the light of section 2537 of the Code, it is to be and must be construed as a direction for the payment of money into court; and such interpretation makes the two sections harmonize, and creates a perfect scheme for protecting the interests of absent-persons. The payment of money to a surrogate is not a payment of money into court, and hence cannot satisfy the terms of a decree which makes a direction so to do, in the absence of some spe-

cial statutory direction authorizing or permitting it. To give the interpretation to the provisions of the decree contended for by the administrator would require me to hold that the surrogate made a decree unauthorized by any provision of law; otherwise, I must hold that it amounted to a direction to pay the money into court in the manner required by section 2537 of the Code, which would be a decree which the surrogate was authorized to make, and it is the latter interpretation that I feel bound to give to it.

It is apparent from the decree that, as originally drawn, it directed the payment of the moneys belonging to Judson Sackett into the treasurer's hands of the county of Chautauqua. This was stricken out, and the provision inserted in its place that it should be paid to the surrogate's court of Chautauqua county. In the interpretation which I have placed upon the statute, the change in phraseology of the decree cannot change its legal purport and effect. Stress is laid by the learned attorney for the administrator upon the provision inserted in the decree that the administrator "take his receipt for the same"; he claiming that such language carries the conclusive implication that it was the surrogate's receipt which was to be taken, and hence the direction to pay the money to the surrogate's court was intended to mean that it be paid to the surrogate, and that possibly while the surrogate may have possessed no authority to direct the money to be paid to himself, yet the decree was conclusive upon the parties so long as it remained unreversed. I am unwilling to concur in this position. In the first place, I think the language employed, "take his receipt for the same," is entirely superfluous; and, secondly, that such language related to the provisions of the decree before modification that the money should be paid to the county treasurer, and was omitted to be stricken from the decree when it was modified as to form, and hence cannot be given the significance contended for, especially as it would make the decree unlawful. It follows from what has been said that the decree has not been complied with, and an execution will issue in favor of the petitioner, Judson Sackett, against Van Buren Sackett for the full amount directed by the decree to be paid, less the payment already made, as above indicated.

Decreed accordingly.

(38 Misc. Rep. 466.)
### In re CONNELLY'S ESTATE.
(Surrogate's Court, Saratoga County. July, 1902.)

1. TRANSFER TAX—APPRAISAL—MODIFICATION.
Where the cash value of an estate has been determined by a surrogate for the purposes of a transfer tax, he cannot modify his determination in order to allow the executor the amount of a judgment subsequently recovered against the estate, by suit, after rejection of the claim, or other expenses of administration.

2. SAME—APPEAL.
Under Transfer Tax Law, § 232, providing that an appeal may be taken within 60 days from the determination of the tax by the surrogate, an appeal taken after that time is too late, whether the surrogate performed his statutory duty of giving notice to all parties interested of the tax imposed or not.